Case number 23-3461, Nayanaben Patel v. Merrick Garland. Argument is not to be seen. 15 minutes per side. Mr. Ahmad, you may proceed for the petitioner. Good morning, your honors. My name is Ani Ahmed. I represent Ms. Patel in this matter. Your honors, I would like to reserve three minutes for rebuttal. Your honor, Ms. Patel has raised three issues before the court, all of them constitutional legal errors. On the underlying case, the first issue is whether the counsel was ineffective throughout the proceedings, not just on July 19th, excuse me, in July of 2019, which was the last proceeding before her petition was denied, but throughout. And I would submit to the court I have in my briefing, put in multiple examples of him being ineffective, but let's just start from the beginning. Before we get to that, in your briefing you indicated that you filed, I believe in August, you filed a motion to reopen and remand. What's the status of that? As of last Thursday, your honor, it was still pending. Okay. So I did that as a prerequisite. I knew that may be a prerequisite to this court hearing this matter, but I knew that at the time that I had a very limited window as I outlined in my brief, I had two weeks. And I know this court gave me an extension, and it gave me an extension to file that brief, but it also gave me an opportunity to track down the petitioner's husband's file, which I never got from counsel. But the fouling of that, does that show that at least some of the claims that you've raised here haven't been exhausted before the BIA? Your honor, I would submit that in terms of ineffective counsel and bias and competence of the judge, they were not raised. The factual findings were raised by underlying counsel before the BIA, which was just turned down flat. He raised all the factual findings, and if you read his brief, I mean, one of the ineffective claims I would make is, it was actually, if you look at his brief, it's like a 12-page paragraph. And he just recites the facts, underlying facts, without making any argument. But the first argument I would make, Judge, is that he put her into proceedings when she had no basis for any sort of immigration benefit whatsoever. So now DHS becomes aware of her, certainly would not be aware of her, would not be put in proceedings, if in fact he hadn't made the claim that based on an application for an I-140, which had not even been approved at this point, that she had some sort of basis to adjust. And as I pointed out in my brief, I think it was the fourth hearing before the immigration court, both the immigration judge and the assistant district counsel are mystified as to why he believes that she has some sort of derivative claim through her husband for a claim that was initially... Mr. Ahmed, I have to say, I spent a lot of time with my law clerk as well, going through all of the hearings, and your claim that there was mistake upon mistake upon mistake of the petitioner's counsel is, in my view, well taken. There are quite a few things, and I think you could spend all of your time telling us about all of them. I think a little bit of the concern as referenced by Judge Mathis' question is, do these issues have to be exhaust? Should we be waiting for an appeal from that motion to reopen? Maybe it's something we should hold this case. I don't know how long that will take, but hold and decide it all together. Because as meritorious as I may find some of those errors that you're pointing out, we do have to think about the exhaustion issue. Right, and Judge, I would think, in terms of filing the brief here, point well taken, Your Honor. I don't disagree with that. I was thinking in terms of judicial economy, but I was also thinking in terms of this brief had to have been filed at a specific date. And so the point is well taken, Your Honor. I wouldn't certainly object to that. If this court says, hey, we'll hold this in abeyance until the BIA makes a final determination on your briefing that you did submit, I think within a week before I submitted a brief here, I waited as long as I could to get his file, the petitioner's husband's file. I just never got it, and I had to file something in terms of not only with the BIA to have some sort of standing with this court, but if you'd like me to cut my argument short based on that, I don't want to waste the court's time. But since I'm here, I'd like to make the argument anyway. No, that's not what I'm suggesting. I think I want to have us focus on the issues that we can decide at this juncture, given what's before us. We usually allow the agency here, the BIA, an opportunity to at least try and fix its mistakes or adjudicate its own issues first. And that's why we like to see that something's been raised before them. It doesn't have to be raised in the exact words or things like that, but that's why I ask. Can I change a little bit? I'm curious. There's been some suggestion, maybe it's from the ineffective counsel below, but that Ms. Patel should be able to adjust because her husband is now a citizen and that there should be a process under the I-130. If there is a removal order here, how does that all work? If she gets removed, is there a 10-year bar? Can you walk me through the consequences a little bit? Interestingly, he didn't ask for voluntary departure. But I would say the logistics of it is I would have to get a motion to reopen approved by the BIA, which I've done. I've requested. It hasn't been approved. And then once that's done, then I can file an adjustment under I-130. And that's part of my ineffective claim, that he's been a permanent resident since 2012, the husband has been. He was a citizen in, I think, 2018. He doesn't file an I-130 until November of 2019, after the last hearing in July. So he could have filed a pleading with the court, and I don't want to beat this to death, Your Honor. I think you understand at least that he was ineffective. But he could have filed a pleading. His first hearing in Kentucky is 2017. He never files a pleading between 2017 and 2019 in saying to the court, hey, I would like to adjust based on the fact that we have an I-130 pending or approved by this time. He doesn't even file an I-130 until November of 2019. Doesn't even file the request for it. So at this point, the court, it's not before the court. The court is adjudicating in 2019 on two issues. Cancellation or removal, which he should have known that her MTA was submitted back in 2009. She claims that she came in in 2000. He should have known off the cuff that he hasn't had the 10 years of continuous presence. He should have known that. Any counsel who does immigration law, and I would submit what he's running is a mill. So he wasn't keeping up with this. He only addressed his client when it was time for a hearing. And my client disputes that she was not, she was in any way lax the days, of course, I set forth in my brief, about getting her medicals done, getting her printing done. Anytime he contacted her, except for one time when he contacted her late, that she went and got her medical done. So the medical, as one of the IJs points out, only lasts for one year. So she didn't tell the truth several times in all these proceedings, right? Judge, Your Honor, we would dispute that. I thought she admitted that she lied about where she came in, whether it's Buffalo or Washington, or by herself, or with this lady actress, or whoever she was. She would, Your Honor, she admits that she did not tell the truth one time. And if you look at the transcript of the 2019, there's obviously some difficulty in translation, and I would give you a very specific example about this. So let's go back to when she didn't tell the truth. So she doesn't have a passport. Shanti Ray, this actress that she paid, she says six lakh. Lakh is a currency in India. It's equivalent to 60,000 rupees. And the judge asked her during the 2019 hearing, and he makes note of this, well, how much is that worth? And she off the cuff says, I think around $12,000. Well, maybe it was worth $12,000 back in 1980, but it's worth less than five now. She's not an expert in terms of how much it's worth. She said, this is what I paid for in Indian currency for it. In 2008, Your Honor, when she comes in, she's coming in 2000, when she goes to USCIS for an adjustment, which she has absolutely no basis for, okay, her husband's not approved for anything at this point, she goes there and she says, I entered Iwi, entered without inspection, through Buffalo, through Canada. And USCIS looks her up and says, well, you had a visa back in 2000. It was issued back on January 8th of 2000. It was good to July of 2000. We have that you entered with a visa. And so the lawyer in this case writes it up, and it's actually in his certification. He writes it up for her. He calls her on the phone. The husband translates. She never looks at that document again. So one of the examples that I wanted to tell this court that's very important is when the judge is questioning her back in 2019, and he's questioning her about, did you lie? It was either the district counsel or the judge was asking her, did you lie about what you wrote about meeting Shanti Ray at the airport? And she goes, wait, what? I mean, she's not understanding what the judge is asking her. She's not saying she's lying on this letter. The letter had never been translated back to her. He wrote it up. Her husband translated for her. She lied one time. She lied to the USCIS about how she entered. She would have no motive to lie about anything else. The reason she lied, the motive for her lying was she no longer had the passport. She no longer had proof. And we're not talking about somebody who's very well-educated. She certainly doesn't speak. At the time, she didn't speak English very well. And she has no recourse to go get this passport back. So someone tells her, just she claims her murder. Someone tells her, hey, just say enter without inspection. She doesn't even know what the difference is, frankly, in terms of immigration benefits. And I will tell you, Your Honor, that it's worse if you're applying under 245-I. You actually got to pay $1,000. So she has no motive to lie about this. As far as the Shanti Ray letter, that was designed by her counsel. And she never even had it translated back to her. She does not say at the hearing in 2019, yeah, I'm lying about that letter, too. She actually says several times, Your Honor, I lied back in 2008. I remember lying about it. This is what I lied about. But in terms of a letter, there is, if you actually read the discourse between the judge and her, she's having a very difficult time understanding what he's talking about. So I would submit to the court, she admits she lies. She actually tells the USCIS that she lies. And she would have no motive to lie about Shanti Ray. She says that it was a fraudulent visa. She paid or she submits the I-601 waiver for it. And I see my time is up. So if the court has any other questions, I'll be moving on. That grounds for denying relief by itself, right? It's not defined to him on a material matter. Judge, if you're asking me, ultimately, can it be denied based on discretion of adjustment? Certainly, DHS has the discretion in terms of adjustment. I would submit to the court that there were certain legal errors and ineffectiveness in this case that led to that discretion. And that discretion, if it's a constitutional violation, can be reviewed by this court. Thank you. Thank you. May it please the court, Jacqueline Hagner on behalf of the Attorney General. This court should dismiss the petition for review for lack of jurisdiction. As the Supreme Court recently held in Patel, this court lacks jurisdiction to review any judgment relating to the agency's denial of adjustment of status, which includes factual findings. And essentially, that is what was just discussed, are factual findings. I think that it is very important to first focus on the discretionary denial in this case. So eligibility for adjustment of status aside, adjustment of status in this case was denied by the agency as a matter of discretion. This court lacks jurisdiction to review that finding. Petitioner's counsel did not appeal that to the board. The board deemed it waived. It is not in petitioner's opening brief. That is independently dispositive of this petition for review. While we have you here and your expertise in immigration law, can I ask just to clarify a few things, if you don't mind, counsel. There's confusion, there's a lot of talk in the credibility finding about different types of visas and documents and things like that. And I'm curious, what do the dates on a B-2 visa indicate? Right, so... She has the copy of her B-2 visa, and I'm wondering, what do those dates indicate as a matter of immigration law? It's a legal question what's on there. Right, so on the visa are the, I believe it's the valid dates. Well, I'll have to be honest with you, I don't have an actual visa in front of me. I have the visa that she submitted into evidence. Okay, so what would those dates mean on her visa? Do you know what that date range indicates? Right, so on the visa that she submitted, it has the issuance date. The issuance of the visa. Right, so that's the date that your visa was approved on this date. That doesn't mean that it's now valid for you to enter. I do think that's normal for their visa. Right, so she's gone to the consulate in India to get a B-2 visa to travel to the United States, and they issue her visa on January 6th, and then there's an end date to the B-2 visa. And those are the dates, and I actually just looked this up on the State Department website, because that's what you do. It says the visa expiration date is shown on the visa along with the issuance date, so that the time between the visa issuance and expiration date is called your visa validity. I think that's what you're saying. And the visa validity is the length of time you are permitted to travel to a port of entry in the United States. So that date range she had between, and I'm going to go back to her visa. It says on here that she has between January 6th, visa issuance, to July 5th, 2000, to go to a port of entry. Right, to go to the United States. Yes, Your Honor. Okay. The other document that we have in here is an I-94, or a replacement I-94, right? Right. All right. And there's a date range on that document. Right. So what do the dates on an I-94 indicate? Right, and I think that's the problem here. Those are the valid dates. So noticeably, our key here is the issuance date is not on this I-94. But tell me just in general, so the I-94, and I actually see that it's defined in our Code of Federal Regulations, what is the issuance date of your I-94? What are the dates on that document? Right, so there's not going to be an issuance date on your I-94 because you're not going to get an I-94 unless you request it later on. It's the record of the fact that you had a visa. Let me tell you what the State Department website says. It says, and again, there's also a Code of Federal Regulation on it that says the exact same thing. It says, upon arriving at the port of entry, the CBP official will determine the length of your visit. On the admission stamp, the paper form I-94, the U.S. Immigration Inspector records either an admitted date or a duration of status. That is the date by which you must leave the United States. So the I-94 form, which in the CFR is your entry-exit form, records your date of entry. You get it at that port of entry. You get it, and then that CBP official will determine the length of your visit. So it makes sense to me that these date ranges are always going to be different. One is the date range by which you can go to the port of entry. Let's say you go to the port of entry on the last day of your B-2 visa. Then you're in customs. We've all been there in line. And the officer issues you your I-94. Here they had to get it replaced because she lost it or never had it. And it gives you the dates that you're allowed to stay in the country. These are different ranges, are they not? Let's focus on what you said in terms of these are different ranges. There are different dates. However, there's one date that is consistent on both documents, and that is the end date, until. And that date on the United States of America, our record of her visa, is different than on the visa that she submitted. And the immigration judge— Hold on. You have a copy of her B-2 visa or you have a copy of her I-94? So the government submitted the I-94, which is not the visa, as I think you highlighted. Right. So it's going to have a different date range. No, because the—so her purported visa says that it expires on 5 July 2000. The I-94 record that the U.S. government has says that it's going to expire on September 2, 2000. No, the I-94 record, if we're following the State Department website and the Code of Federal Regulations, is the date by which the CBP officer determines that she has to leave. She could have traveled on her B-2 visa, which the government admits that it gave her on January 6. She could have traveled—she could have waited until July 4, right, and traveled on that visa. Then she would get into the United States. They'd issue her an I-94 telling her how long she could stay. And that form would say, okay, well, it's valid. You can be here from July 4, and maybe they'd give her two weeks. You know, this is confusing, and actually the State Department website tells us this is confusing. It says, sometimes understanding the difference between the visa expiration date and the length of time you have permission to remain in the United States can be confusing. But these are very different terms. The IJ here and the BIA, and quite frankly, you seem to be conflating these date ranges, which as a matter of law are going to be different. I just—I'm not confident I agree with you on that, Your Honor. To be helpful here, I would like to say that the two documents that are conflicting, or our position is that they are conflicting, the agency's position is that they're conflicting. It's kind of a red herring. It is really at the bottom of the barrel of the credibility determination here. Well, it's mentioned all over the place. And I mean, indeed, like, the IJ calls this a fraudulent document. He first accuses her of fraud a bit, which doesn't make any sense, because we have a letter from USCIS verifying that it did indeed issue her this visa on January 6, but he calls her fraudulent for it. And then he says, oh, well, it's different from this I-94, and it has different dates. But as the State Department website tells us, they're going to have different dates. And indeed, the State Department, in case you're confused, shows us a picture of the visa and what the different dates mean. And it says, when it has the expiration date here, it says, expiration date is the last day you can use your visa to state entry into the U.S. It has nothing to do with how long you may stay in the U.S. For that, you see what is a visa. And then it explains your I-94 is going to give you different dates. So it really seems quite clear, even in an FAQ, that these are different date ranges. Yet the IJ is just all over her for supposedly fraudulent documents. He even tells the attorney at the time, go look this up. You know, what happened here with all these government documents? But it seems very clear that they're never going to have the same date range, or very, very infrequently. Right. Everything that you are discussing right now is nowhere on the record. And with all due respect to Petitioner, it is a burden. I mean, I got this from the record. Her preferred visa, right? This from the record. And what an I-94 is, is a matter of the Code of Federal Regulations. I would also disagree with Your Honor that this is all throughout the record. What is throughout the record is her lies to immigration officers throughout the years. And that, in our opinion, is the focus of the agency's credibility determination. Which is very factually similar to the Supreme Court's decision in Patel. So Patel dealt with the credibility determination. Is her argument that if the IJ hadn't confused these documents, and that the date ranges, the fact that the date ranges aren't the same, doesn't show that she made up things, and she fraudulently somehow made a B-2 visa that the government has record of. If he didn't think that, the case would have come out the same. Because it is confusing. That is exactly our position, Your Honor, is that the credibility evidence in this case is so strong that we certainly just do not know her manner of entering into the United States. And quite frankly, every time she offered testimony, the government knows the story. Excuse me. Let's make sure we allow Jez. We're going to give you plenty of time. Yes, Your Honor. I mean, it's a little weird that we feel we have no idea when she got here and how she got here when the government tells us, and this is the letter in the record, that the government tells us they issued her a visa on January 6th, right? In India. This is the government. Do you think this is a fraudulent document? The IJ didn't say it was fraudulent. And so we know from the government that they issued her a visa, and then we know from the government and the IJ did credit that she got the replacement I-94 and when the dates are. And so, quite frankly, I myself might not trust the petitioner or any petitioner on when and how they came, but I do trust the government. And the government records who's coming in and how they're coming in, especially here, she's got the paperwork. And I think the problem with not knowing when she got here and how she got here is because comparing these two things, the IJ got confused, as the State Department website says, it can be confusing. But it's very clear that trusting just the government and the government documents that we know when and how she got here. We don't know her time in or place or entry based on the... Do you think the I-94, which is the entry document, that she did not come on March 3rd? We don't know that. In fact, I think she testified that she came on March 30th in Washington, D.C., and another time she said that she came through Buffalo, New York. I don't think we know. You're right. And as your friend admitted, she did lie when she came in because she didn't have her passport and she got that advice. So we do have a lie, and I'm not saying that the IJ can't rely on that. But I'm trying to get to this. I'm trying to understand the B-2 I-94 issue and why I shouldn't trust actual government documents. And the IJ did credit this document. The IJ said we're going to rely on the USCIS document. Somehow the IJ didn't credit the B-2 visa, even though we have a letter in the record showing from the government that it did indeed issue this visa. And I think that your concerns with the B-2 visa, in order to get to the heart of what you find concerning, you have several loops to jump through. The first being is the discretionary denial. The second being the Supreme Court's decision in Patel, which has very similar factual findings here as an adverse credibility determination. Yeah, and I agree, the Patel case, that's a hard standard. And part of it is like I'm just trying to figure out what all these forms are. And I think it's good for an IJ and for attorneys involved in the case to know the difference between a B-2 and an I-94, especially if it's just on an FAQ and a State Department website. But it strikes me that the dates or factual things about what's on an I-94, that it says these particular dates, those are certainly fact questions that we can't review after Patel. But why isn't what the meaning of an I-94 is, what the dates stand for, when you get this form, why isn't that a question of law, particularly given that it's within our Code of Federal Regulations? And I should say, I understand that your friend did not argue it that way below, that counsel didn't argue it that way below. But I'm trying to understand why just the basic question, what is an I-94, what is a B-2 visa? Aren't those legal questions? Before I answer that, I want to make sure I understand your question. So the law you want to apply is what is an I-94, is that correct, Your Honor? And then whether or not... And what is a B-2 visa? But what are the factual findings you are attempting to apply to that law? I'm not trying to apply any facts. If this is a legal question, what an I-94 is and what a B-2 visa is, if you think those two things are the same things that indicate that they're going to have the same date ranges on them, isn't that a legal error? Because these, indeed, are not the same thing? I think, Your Honor, we're speaking in circles. I won't disagree with you that what an I-94 is is probably a legal question. How that plays into this case, I'm just not following. For the reasons I just mentioned, we don't even really get there. And also, it's just not relevant. I get the harmlessness argument, and I think that's well taken. There's lots of credibility issues here. But I do find it concerning that we've gone through this whole case and with your friend raising this issue that a B-2 and an I-94 are not the same thing, and he raised this. Even the ineffective attorney raised this to the BIA. Hey, these aren't the same things. You can't find her not credible on this. But that we have this conflation between a B-2 visa and an I-94 that goes through. And quite frankly, counsel, it's in your brief as well. And I think it's important that we are not faulting someone for having documents from the government, issued by the government, that have different date ranges because indeed, as a matter of law, they have different date ranges. That's the part, I think that last part, I'm not necessarily agreeing with you on. I think that, if I may, I'm out of time. If I may respond, the B-2 visa that's in the record that was submitted by Petitioner, I think it's helpful to look at what point it was submitted into the record. So what happened here was after she showed up for an interview with USCIS and it describes her manner of entry as coming through Buffalo, New York. And that's when USCIS, in fairness, in a perfect example of due process, confronts her with this record and says, you know, we have a record that you actually had a visa that was from March to September. That's what they're, they said that it was issued in January and that the valid dates were from March to September. So it says USCIS records demonstrate that on January 6, 2000, you were issued a visa. It says that her application was on a different date. That's what I intended to say. So she was issued a visa in January of 2000. That's what USCIS confronts her with that record. It's consistent with this, right? Well, that's exactly... But this is a visa on the issuance date. It's January 6th. So that's exactly my point. She understands what USCIS then told her, that she was issued a visa. However, and that's what, those are the consistent dates. However, USCIS explains to her, no, no, you were issued this visa in January of 2000, but the valid dates, basically you couldn't travel on this visa until March, and it was valid until September. Where is that in the letter? No, the letter doesn't explain that. The record page on 420, the I-94 explains that. No, no, no, no, no. The I-94 is a different date range as a matter of law, and I'll read the CFR again. But this date is her entry date until the date that she can stay. The visa date is the date your visa is approved, is issued, till the date that you have to make it into a court of entry. That's where the problem comes in with not understanding the difference between an I-94 and a B-2 visa. When you take the dates here and say, oh no, we issued it for different dates. No, the I-94 includes a different date range as a matter of law, and even as explained basically on the State Department website. I will stop badgering you about that difference, but it's not something that I'm uncertain about. Perhaps it would be best if I were to conclude. I think that... I understand we disagree, and I understand that you have a strong concern here regarding those dates. I think that that is just simply not relevant to the court's jurisdiction here. I think that you'd have to, as I previously mentioned, you would have to jump through. Your court's decision would have to ignore the discretionary denial and the Supreme Court's decision battalion in order to write on the issue you'd like to discuss. Thank you. Okay, thank you very much, Your Honor. Your Honor, I would just like to address a couple points that counsel stated to this court. First of all, it was not a red herring. It was in the first four paragraphs of the judge's oral decision denying the adjustment. He relies on this. In fact, if you read the transcript, Your Honors, he actually tells the Assistant District Counsel to investigate her for fraud on this. They're completely two different documents. As I outlined in my brief, a visa allows you to come into the country during the specific time designated in the visa. As Your Honor pointed out, January 6th, and I think it ran sometime until July, she can enter the country any time between those dates she has an approved B-2 visa. Once you enter the country, you are issued an I-94 stamp. It indicates the date of entry, March 3rd. Counsel states that, well, she lied in 2019 and she said she entered at the end of March. She's talking about a date that occurred 19 years before. Off the cuff, oral testimony, she says, I think it was the end of March. I'm paraphrasing. But she says somewhere around March 30th. Certainly, that wouldn't show that she was not credible. In fact, it would be credible for a person not to remember a date from 19 years prior to that unless some counsel had had her memorize it before. But she did say she came in in Buffalo. She did. She lied one time. They keep saying plethora of lies, Judge. Look at AR-235. When counsel is asking or the judge is asking her about this Shanti Ray and this letter you wrote to USCIS and that you met Shanti Ray at the airport and you didn't want to work for her, she says, I'm sorry. What did you say? And the interpreter interrupted the judge three times and asked for clarification because she was not understanding what she knew that she lied to USCIS. But she had no idea about this letter. This letter was never written back to her. She indicates that she had already told counsel even prior to the interview in USCIS that she no longer had her passport. And it was recommended to her. She doesn't know the difference between EWE and she doesn't know the legal differences. And counsel knew about it. So there wasn't just one mistake, Judge. There was a number of mistakes. Now, counsel keeps talking about Patel versus Garland. I would tell you that the United States took a very different position in that case. In fact, their argument to Judge Barrett or Justice Barrett was that, in fact, the factual underlying findings don't include, aren't part of the judgment. I would tell the court that Justice Barrett really relied on amicus briefs in terms of the findings that judgment does. But we're bound by Patel. I understand that, Your Honor. But I would submit to the court that the arguments I've made are not factual findings. The competence of the IJ, the ineffectiveness of the lawyer, the continuance. They had a witness that wasn't available, the husband. And the attorney told the IJ in the first paragraph of that transcript, hey, her husband's now a United States citizen. Thank you, Your Honor. Thank you. Thank you all for your arguments. Your case will be submitted.